NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Rockingham
No. 2018-0649

CITY OF PORTSMOUTH

v.

150 GREENLEAF AVENUE REALTY TRUST & a.

Argued: September 25, 2019
Opinion Issued: January 24, 2020

McLane Middleton, P.A., of Manchester (Bruce W. Felmly and Benjamin B. Folsom on the brief, and Mr. Felmly orally), and Law Office of Mark P. Hodgdon PLLC, of Concord (Mark P. Hodgdon on the brief), for the plaintiff.

Law Offices of John Kuzinevich, of Duxbury, Massachusetts (John Kuzinevich on the brief and orally), and Devine, Millimet & Branch, P.A., of Manchester (Joshua Wyatt on the brief), for the defendants.

DONOVAN, J. The plaintiff, City of Portsmouth (City), appeals following a bench trial in Superior Court (Delker, J.) in which the trial court ruled that the City's taking by eminent domain of 4.6 acres of land owned by the defendants, 150 Greenleaf Avenue Realty Trust and Minato Auto, LLC, was unlawful. On appeal the City contends that the trial court erred in: (1) setting aside the taking based on a finding that the City did not set forth statutory authority for taking the wetlands; (2) determining that the City failed to demonstrate a reasonable present public need for taking the wetlands; (3)

finding that the City's taking of the sewer line in fee simple was improper and that the burden on the condemnee outweighed the public necessity; and (4) finding that the City's purported improper motivation to end litigation with the defendants was a basis to set aside the taking. We affirm.

The trial court found, or the record supports, the following facts. For ease of reference, we refer to the land, as did the trial court, as belonging to James Boyle, as he holds it in trust for himself through the 150 Greenleaf Avenue Realty Trust.[1]

In December 2003, Boyle purchased 13.78 acres of land on the corner of the Route 1 Bypass and Greenleaf Avenue in Portsmouth. In 1968, the City had constructed a sewer line in an earthen berm across the western portion of that land, having received permission to do so from the New Hampshire Board of Education. The land at that time was owned by the State of New Hampshire and used by the Board. The City never obtained a written easement from the State for the sewer line. The State sold the land in 1983. When Boyle purchased the property, there was no record in the registry of deeds that the City had an easement.

In 2010, Boyle sued the City, alleging that the sewer line was trespassory and that the City allowed water to back up on his land because it did not properly maintain culverts under the sewer line (the sewer line litigation). In 2014, in the context of the sewer line litigation, the trial court, in part, determined as a matter of law that: (1) the City had only a revocable license for the sewer line; (2) Boyle had authority to revoke permission to keep the sewer line on his property; and (3) the City would either have to pay rent to Boyle until it removed the sewer line or exercise its power of eminent domain to acquire a property interest in the land. See Boyle v. City of Portsmouth, ___ N.H. ___, ___ (decided January 24, 2020) (slip op. at 2-3).

In May 2016, the court scheduled a jury trial in the sewer line litigation to begin in January 2017. In September 2016, the Portsmouth City Council adopted a resolution regarding the public necessity for the City to take 4.6 acres of Boyle's property in fee simple absolute which encompassed the sewer line and the wetlands. In December 2016, the City filed a "Declaration of Taking" with the Board of Tax and Land Appeals (BTLA). Boyle filed a preliminary objection, challenging the "necessity, public use, or net-public benefit" of the taking. See RSA 498-A:9-b, I (2010). In January 2017, the BTLA transferred the objection concerning necessity, public purpose, or net-public benefit to the trial court. See id.

Following a three-day bench trial in May 2018, the trial court issued a 29-page order sustaining Boyle's preliminary objection. The court determined

---

[1] Boyle is also the principal of Minato Auto, LLC.

that the statutory authority cited by the City did not justify taking the wetlands, but did justify taking the sewer line. However, balancing the public necessity for maintaining the sewer line against the burden on Boyle's property rights, the trial court determined that the public's need for a limited easement right along the sewer line did not outweigh the aggregate impact of the fee-simple taking of 4.6 acres of Boyle's land. Therefore, the trial court ruled that the condemnation was not justified. Alternatively, the trial court ruled that the City's "true motive for seizing Boyle's land was to cut off any future litigation over the development" of the property and that this was "not a proper purpose of exercising eminent domain authority." Recognizing that it lacked the authority to amend the declaration of taking to decrease the physical extent of the taking or the nature of the property taken, see RSA 498-A:5, III (2010), the court sustained Boyle's preliminary objection and set aside the condemnation.

In reviewing a trial court's decision rendered after a trial on the merits, we uphold the court's factual findings and rulings unless they lack evidentiary support or are legally erroneous. O'Malley v. Little, 170 N.H. 272, 275 (2017). We do not decide whether we would have ruled differently than the trial court, but rather, whether a reasonable person could have reached the same decision as the trial court based upon the same evidence. Id. Thus, we defer to the trial court's judgment on such issues as resolving conflicts in the testimony, measuring the credibility of witnesses, and determining the weight to be given evidence. Id. Nevertheless, we review the trial court's application of the law to the facts de novo. Id.

RSA 498-A:5 (2010) provides that "[c]ondemnation . . . shall be effected only by the filing in the [BTLA] of a declaration of taking" in writing containing a "specific reference to the statute, chapter and section thereof, under which the condemnation is authorized." RSA 498-A:5, I, II(c). The City's Declaration of Taking stated that "[p]ursuant to NH RSA 47:11 the City Council has the lawful power to undertake the 'layout' of sewers and drains (for stormwater) and to acquire by eminent domain property necessary for that effort following procedures set out in RSA 230 et seq. and RSA 498-A et seq.; further authority exists under NH RSA 149-I:2 and other statutes." Accordingly, the trial court determined that the City based its taking authority on RSA 47:11 (2012) and RSA chapter 149-I (2005 & Supp. 2018).

On appeal, the City contends that, in fact, the taking was justified under RSA 31:92 (2019). However, the City did not refer to RSA 31:92 in its Declaration of Taking. The City's general reference to "other statutes" does not suffice. Nor does the record demonstrate that the City moved to amend the declaration. See Bean v. Red Oak Prop. Mgmt., 151 N.H. 248, 250 (2004) (explaining that the appealing party has the burden of providing a record sufficient to demonstrate that it raised all of its appeal issues before the trial court). Thus, the trial court did not err by focusing only upon RSA 47:11 and RSA chapter 149-I. Because the City argues for the first time on appeal that

there is "clear precedent that [it] had authority for the taking under the general grant in RSA 31:92," the City has failed to preserve this argument, and we decline to address it.  See id.

The trial court determined that the statutory authority cited by the City did not justify taking the wetlands.  The City disagrees, relying upon RSA chapter 149-I.  Pursuant to RSA 149-I:1 (Supp. 2018), the City has authority to "construct and maintain all main drains or common sewers, stormwater treatment, conveyance, and discharge systems, sewage and/or waste treatment, works which [it] adjudge[s] necessary for the public convenience, health or welfare."  Under RSA 149-I:2 (Supp. 2018), "[w]henever it is necessary to construct such" systems and/or facilities "across or on the land of any person and the city cannot obtain for a reasonable price any land or easement in land required by it," the City "may lay out a sufficient quantity of such land for the purpose."

The trial court reasoned that taking the wetlands was not justified under this chapter because its plain language does not suggest "that a municipality can take raw land and keep it in that state for natural stormwater management."  The City asserts that the trial court "ignored the word 'maintain,'" and "took an unreasonably restrictive view of the word 'construct,'" contending that "[t]he property taken by the City is one part of a stormwater system for the subcatchment area that has been constructed by combining or arranging parts or elements, including wetlands, water courses, culverts, pipes, catchment basins, etc."

The City's statutory construction is unduly strained and its arguments concerning a "stormwater system" are not supported by the evidence.  As the trial court observed, the City's engineer testified that "much of the condemned property is not needed for the operation and maintenance of the existing sewer line," and the court found that the "undisputed evidence in this case is that the City has no plans for construction of any 'drains or common sewers, stormwater treatment, conveyance, and discharge systems, sewage and/or waste treatment works' on the wetland portion of the condemned property."  The record supports the trial court's findings.  Accordingly, we uphold the trial court's determination that RSA chapter 149-I does not authorize the taking.

In light of our decision, we need not address the City's challenge to the trial court's alternative ground for invalidating the taking, namely, its finding that the City's "true motive" for condemning Boyle's property was not for purposes of stormwater management, but was, instead, to end the litigation with Boyle.

Affirmed.

4

HICKS and BASSETT, JJ., concurred; ABRAMSON and BROWN, JJ., retired superior court justices, specially assigned under RSA 490:3, concurred.